IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MARSHALL SHANKLIN,<br>　　Plaintiff<br><br>vs.<br><br>COLUMBIA MANAGEMENT<br>ADVISORS, L.L.C., and FINANCIAL<br>INDUSTRY REGULATORY<br>AUTHORITY, INC.<br>　　Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | C.A. No. 4:07-cv-02690<br><br>Jury |

PLAINTIFF MARSHALL SHANKLIN'S
FIRST AMENDED COMPLAINT

Plaintiff MARSHALL SHANKLIN hereby files this First Amended Complaint against Defendant COLUMBIA MANAGEMENT ADVISORS, L.L.C. and FINANCIAL INDUSTRY REGULATORY AUTHORITY, INC.

I. JURISDICTION AND VENUE

1.　This case was originally filed in state court, and was removed by the Defendant under 28 U.S.C. § 1441.  The Court has diversity jurisdiction under 28 U.S.C. § 1332.  The amount in controversy, excluding interest and costs, exceeds $75,000.

2.　Venue is proper as a substantial part of the Plaintiff's claims arose in this District.  28 U.S.C. § 1391.

II. PARTIES

3.　Plaintiff Marshall Shanklin is an individual who resides in Texas.

4.	Defendant Columbia Management Advisors, L.L.C. ("CMA") is a Delaware limited liability company with its principal place of business in Massachusetts. It has appeared and answered.

5.	Defendant Financial Industry Regulatory Authority, Inc. ("FINRA") is a Delaware corporation with its principal place of business in either New York or the District of Columbia. It may be served with process through its registered agent: Corporate Creations Network Inc., 4265 San Felipe, #1100, Houston, Texas 77027. FINRA conducts business in Texas and is subject to general personal jurisdiction here.

### III.  FACTS

6.	Shanklin was employed at CMA as a Vice-President in sales beginning in 2005. Shanklin's compensation package included several elements, including a salary, benefits, and various incentive programs.

7.	Part of the incentive program entitled Shanklin to a percentage of revenues from various products sold by CMA, to be paid over a period of time ranging from 4 to 12 quarters. For example, the 2006 "Monthly Formulaic Incentive" plan provided that Shanklin would receive 23% of the revenue from long term products for the first four quarters from the funding quarter (the first year), and 7% of revenue for another eight quarters (years two and three). The 2005 plan was similar, although the first year payout was higher and years two and three paid at 5%.

8.	For the first four quarters of his employment, Shanklin was promised a minimum quarterly incentive payment of $22,500 per quarter. Shanklin received these minimum payments through the first quarter of 2006.

9.      Shanklin sold a significant amount of investment products in 2005 and 2006.  These sales funded, and Shanklin earned the incentive payments promised to him as part of the 2005 and 2006 incentive plans.

10.     CMA terminated Shanklin without cause on November 21, 2006.

11.     CMA has failed to pay Shanklin all of the incentive payments he was entitled to under the 2005 and 2006 incentive plans.  Furthermore, CMA has failed to provide Shanklin with adequate information and documents to verify the amount of payments to which he is entitled.

12.     At his termination, CMA also owed Shanklin reimbursement for expenses and unused vacation time.  Shanklin has been unable to verify that all of this reimbursement has been paid.

13.     All conditions precedent to CMA's performance have been performed or have occurred.

14.     As part of his job, Shanklin was required to register with the National Association of Securities Dealers ("NASD").  After his termination, CMA filed a Form U-5 with the NASD stating that Shanklin was terminated for an "Internal Policy Violation; Non-Securities Related." Any future employer considering whether to hire Shanklin for a position requiring NASD registration would as a matter of course obtain the data from the Form U-5 before hiring Shanklin.  Accordingly, Shanklin was required to, and did, disclose CMA's stated reason for termination to prospective employers following his termination from CMA.  As a result, for the first time in his career Shanklin had substantial difficulty trying to obtain suitable employment in the field.  Shanklin was unemployed until late 2007.

15.     The "policy violation" alleged by CMA related to the manner of reporting entertainment expenses and gifts.  Shanklin had accurately reported all such expenses through CMA's expense-reimbursement system, but was told that he needed to report some expenses a second time on a

different form.  Shanklin was told that he could simply copy the expenses in question onto the different form, but was told the next day that he was terminated.  Shanklin was not terminated for this alleged "policy violation," and CMA knew its Form U-5 was inaccurate.

## IV.  CAUSES OF ACTION

### Breach of Contract

16. The failure of CMA to pay Shanklin the incentive payments he was entitled to under the 2005 and 2006 incentive plans is a breach of contract which caused Shanklin damage.

17. In the event CMA has not fully reimbursed Shanklin for the expenses and unused vacation time he was owed at the time he was terminated, such failure is a breach of contract which caused Shanklin damage.

### Quantum Meruit

18. Alternatively, if there was no contract for the 2005 and 2006 products, Shanklin is entitled to recover the reasonable value of his services under *quantum meruit*.

### Defamation

19. The statement that Shanklin was terminated for an "Internal Policy Violation" in the Form U-5 was authorized by CMA.  The statement defamed Shanklin because it was a false, defamatory statement of fact referring to Shanklin published to third persons, without legal excuse or privilege, that damaged Shanklin's professional reputation.  The statement constituted defamation *per se* and/or *per quod*.  It was foreseeable to CMA that Shanklin would be compelled to tell prospective employers about the contents of the Form U-5 filed by CMA.

CMA acted with actual malice in filing the Form U-5, because it knew Shanklin was not terminated for a "policy violation."

20.     Shanklin has no adequate remedy at law for the defamatory statement on CMA's Form U-5.  NASD rules do not allow CMA itself to amend the "Full Termination" section of the Form U-5, where the defamatory statement was made.  However, FINRA policy allows arbitration panels or courts to order that defamatory information be expunged from a Form U-5 and replaced with accurate information.  Accordingly, the Court should order FINRA to expunge the information provided by CMA in Section 3 of Shanklin's Form U-5 and replace that information with accurate, non-defamatory information regarding the reason for Shanklin's termination.

### V.  PROXIMATE CAUSE AND DAMAGES

21.     As a result of the above-described tortious acts and breaches of contract, Shanklin has suffered actual damages in an amount which exceeds the minimum jurisdictional limit of this Court.  These damages include loss of incentive pay, past and future damage to reputation, past and future mental anguish, lost wages, and unpaid expenses and vacation time, if any.

22.     Shanklin is entitled to recover exemplary damages for defamation.

23.     All conditions precedent to the filing of this action have been performed or have occurred.

24.     Shanklin has been required to retain an attorney to recover the amounts he is owed.  Shanklin has not been paid for these amounts, although he has demanded payment from CMA.  Accordingly, Shanklin is entitled to recover his reasonable attorney's fees under Chapter 38 of the Texas Civil Practice & Remedies Code.

## VI. RESPONSE TO AFFIRMATIVE DEFENSES

25. To the extent any condition precedent to CMA's obligation to pay Shanklin failed to occur, CMA itself prevented the condition precedent from occurring and therefore may not rely on such failure to excuse the performance of its obligations.

26. In the alternative, if the 2005 and 2006 incentive plans do not unambiguously entitle Shanklin to the unpaid incentive payments, then the plans are ambiguous. Ambiguities in the 2005 and 2006 incentive plans should be construed against their drafter, CMA.

27. Shanklin denies that the contracts upon which he sues were within the statute of frauds.

28. In the alternative, a writing or multiple writings satisfy the statute of frauds for each contract.

29. In the alternative, CMA assented to each contract by its acts, conduct, or acquiescence.

30. In the alternative, Shanklin pleads the doctrine of partial performance in avoidance of the statute of frauds.

31. In the alternative, Shanklin pleads that he fully performed his part of each contract.

## VII. JURY DEMANDED

32. Shanklin timely requested a jury trial in compliance with the Texas Rules of Civil Procedure, before this case was removed to federal court.

WHEREFORE, PREMISES CONSIDERED, Plaintiff Marshall Shanklin respectfully requests that, after trial by jury on all issues so triable, the Court award him judgment for all legal and equitable relief to which he may be entitled, including the following:

- A. Actual damages, including but not limited to unpaid incentive payments under the 2005 and 2006 incentive plans;

- B. Exemplary damages;

- C. Expungement of the defamatory information on CMA's Form U-5 for Shanklin and replacement of the defamatory information with accurate, non-defamatory information;

- D. Reasonable attorney's fees;

- E. Pre- and post-judgment interest;

- F. Court costs; and

- G. Any other relief to which he may be entitled.

SIGNED this 24th day of March, 2008.

Respectfully submitted,

   /s/ Lance C. Arney
Lance C. Arney
Attorney-in-Charge
State Bar No. 00796137
S.D. Tex. Bar No. 20703
1401 McKinney, Suite 1800
Houston, Texas 77010
(713) 333-2800
(713) 650-0521 (fax)
lance@arneylaw.com

## CERTIFICATE OF SERVICE

  I hereby certify that on this 24th day of March, 2008, a copy of the foregoing was filed electronically with the Clerk of Court to be served by operation of the Court's electronic filing system to all counsel of record.

                /s/ Lance C. Arney
                Lance C. Arney


J. Bradley Spalding
Fazila Issa
LITTLER MENDELSON, P.C.
1301 McKinney Street, Suite 1900
Houston, Texas  77010
*Attorneys for Defendant*
*Columbia Management Advisors, L.L.C.*