**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| MARSHALL SHANKLIN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-07-2690 |
| | § | |
| COLUMBIA MANAGEMENT | § | |
| ADVISORS, L.L.C., | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND ORDER**

The plaintiff, Marshall Shanklin, seeks financial information and documents from his former employer, Columbia Management Advisors, L.L.C. ("CMA"). The information and documents relate to investment products that Shanklin claims that he sold, and were funded, during his employment by CMA between April 2005 and November 21, 2006. The sales at issue were to five institutional clients. The parties dispute whether Shanklin actually sold all of these products, whether he is entitled to posttermination incentive bonus payments based on the financial performance of these products, and the amount of any such bonus. Shanklin has moved to compel CMA to respond to interrogatories and document requests asking for information about the posttermination bonus payments. (Docket Entry No. 40). CMA has responded, (Docket Entry No. 41), and Shanklin has replied, (Docket Entry No. 42).

Based on a careful review of the motion, the responses, and the applicable law, this court orders CMA to respond to Interrogatory No. 1(a)–(e) and produce documents responsive to Requests for Production Nos. 7, 9, 10, and 14, for all five customer accounts. CMA must produce documents responsive to Request for Production No. 13 that relate to any new sales or new money in the Energy East or Koch accounts in 2006. CMA need not respond to Interrogatory No. 1(f), Interrogatory No.

2, or Requests for Production Nos. 8, 11, and 12, for any of the five accounts, and need not produce documents responsive to Request for Production No. 13 for the Texas Children's Hospital, Fulbright & Jaworski, and NiSource accounts.

The reasons for these rulings are set out below.

## I.    Background

Shanklin seeks information about sales in five institutional client accounts: Texas Children's Hospital, Fulbright & Jaworski, NiSource, Energy East, and Koch (together, the "Customers"). The parties agree that Shanklin was responsible for originating the sale of long-term products in the Texas Children's Hospital, Fulbright & Jaworski, and NiSource accounts. The parties dispute whether he was responsible for originating the sale of long-term products or cash products in the Energy East or Koch accounts. The parties have agreed that the discovery requests are limited to "not more than a three (3) year period from the initial funding date for the particular account." (Docket Entry No. 41 at 4). The following discovery requests are in dispute:

> **Interrogatory No. 1:**
> For each of the Customers, please state:
> a) all strategy/products obtained from or through CMA;
> b) the date and amount of every funding for each such strategy/product;
> c) the date and amount of every fee charged to the Customer by CMA;
> d) the basis and method of calculation for each fee identified in subpart (c);
> e) for each quarter, the quarter-end market value of each such strategy/product;
> f) the holder of record for every strategy/product obtained.
>
> **Interrogatory No. 2:**
> With respect to every Customer acquiring a strategy/product for a defined contribution plan with individual participant accounts, please state:

a) for each quarter, the aggregate quarter-end market value of all CMA strategy/products held by all plan participants, with subtotals for each strategy/product if more than one is offered through the plan;
b) for each quarter, the aggregate fees charged by CMA, by date, strategy/product, and amount, with respect to all CMA strategy/products held by all plan participants;
c) the basis and method of calculation for each fee identified in subpart (b); and;
d) the name, address, and telephone number of the custodian(s) or trustee(s) of the participant accounts.

**Request for Production No. 7:**
All documents showing the funding of mutual funds, separate accounts, and cash products by the Customers (or any of them) or by participants in any plan offered by the Customers (or any of them) in which a CMA strategy/product was used.

**Request for Production No. 8:**
All contracts with the customers (or any of them) relating to a strategy/product obtained from or through CMA.

**Request for Production No. 9:**
All documents showing the asset value of investments in a strategy/product sold by CMA to any Customer.

**Request for Production No. 10:**
All documents showing fees charged by CMA to the Customers (or any of them), including but not limited to documents showing the amount of the fees and the basis for the calculation.

**Request for Production No. 11:**
All documents showing fees charged by CMA to the participants in any plan offered by any Customer, including but not limited to documents showing the amount of the fees and the basis for the calculation.

**Request for Production No. 12:**
All documents showing fees charged by CMA to the custodian or trustee of any plan offered by any Customer, including but not limited to documents showing the amount of the fees and the basis for the calculation.

**Request for Production No. 13:**

>All correspondence or communications to or from Customers (or any of them) relating to a CMA strategy/product (whether ultimately purchased/obtained or not).
>
>**Request for Production No. 14:**
>All documents showing any payment based on a percentage of the revenue from any CMA strategy/product obtained by any Customer to any salesperson (including but not limited to Marshall Shanklin).

(Docket Entry No. 40 at 4–6, Ex. 1 at 3–6).

### A. The Resolved Disputes

Many of the parties' objections were resolved in the briefing on the motion to compel. For example, in response to the motion to compel, CMA agreed to respond to Interrogatory No. 1(a)–(e) for the Texas Children's Hospital, Fulbright & Jaworski, and NiSource accounts. CMA objected to Interrogatory No. 1(f) on the basis that it "encroaches upon the privacy interest of current and/or former customers." (Docket Entry No. 41 at 5–7). Shanklin replied that Interrogatory No. 1(f) was only necessary if "CMA contended that it did not have the requested information" in Interrogatory No. 1(a)–(e), and stated that because CMA had agreed to provide this information, he would withdraw his motion to compel a response to Interrogatory 1(f) for Texas Children's Hospital, Fulbright & Jaworski, and NiSource, "without prejudice to re-urging the motion" if CMA does not respond to Interrogatory No. 1(a)–(e). (Docket Entry No. 42 at 1–3).

CMA also stated in its response that it had no information responsive to Interrogatory No. 2 for for the Texas Children's Hospital, Fulbright & Jaworski, and NiSource accounts, because these accounts are not defined contribution plans. (Docket Entry No. 41 at 5–7). Shanklin's reply did not dispute that these accounts are not defined contribution plans, and did not reurge a response to Interrogatory No. 2. Shanklin did not move to compel a response to Interrogatory No. 2 for the

Energy East and Koch accounts. There is no remaining dispute with respect to Interrogatory No. 2 for any of the accounts at issue.

CMA has agreed to produce documents responsive to Requests for Production Nos. 7, 9, and 10 for the Texas Children's Hospital, Fulbright & Jaworski, and NiSource accounts. (Docket Entry No. 41 at 5–7; Docket Entry No. 42 at 2–3). CMA objected to Requests for Production Nos. 8, 11, 12, and 13 for the Texas Children's Hospital, Fulbright & Jaworski, and NiSource accounts, primarily on the basis of relevance. Shanklin responded to these objections by stating that he had not intended to move to compel CMA to respond to Requests for Production Nos. 8, 11, 12, and 13 with respect to the Texas Children's Hospital, Fulbright & Jaworski, and NiSource accounts. (Docket Entry No. 42 at 2–3).[1]

### B. The Remaining Disputes

The parties' briefing, in short, has narrowed the issues. With respect to the Texas Children's Hospital, Fulbright & Jaworski, and NiSource accounts, only Request for Production No. 14 remains in dispute. With respect to the Energy East and Koch accounts, Interrogatory No. 1 and Requests for Production Nos. 7–14 remain in dispute.

## II. The Legal Standard

Federal Rule of Civil Procedure 26(b)(1) provides, in relevant part:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense – including the existence, description, nature, custody, condition, and location of any

---

[1] Shanklin made this statement only with respect to Texas Children's Hospital, but did not dispute CMA's objections to Requests for Production Nos. 8, 11, 12, and 13 with respect to Fulbright & Jaworski and NiSource. Because the parties appear to have otherwise agreed to treat the Texas Children's Hospital, Fulbright & Jaworski, and NiSource accounts similarly for discovery purposes, this court presumes that Shanklin also did not intend to move to compel responses to Requests for Production Nos. 8, 11, 12, and 13 for the Fulbright & Jarworski and NiSource accounts.

> documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. . . .

FED. R. CIV. P. 26(b)(1). Rule 26(b)(2)(C) requires a court to "limit the frequency or extent of discovery otherwise allowed . . . if it determines that":

> (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
>
> (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
>
> (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

FED. R. CIV. P. 26(b)(2)(C).

### III. Analysis

#### A. The Texas Children's Hospital Account

The parties agree that Shanklin was the originating salesperson for a long-term product in the Texas Children's Hospital account. Document Request No. 14 seeks "[a]ll documents showing any payment based on a percentage of the revenue from any CMA strategy/product obtained by any Customer to any salesperson (including but not limited to Marshall Shanklin)." Shanklin argues that these documents are necessary to show "whether any other salesperson was paid a commission on the Texas Children's Hospital account after Shanklin was terminated." (Docket Entry No. 40 at 7). Shanklin contends that this information would reveal "whether the additional money added to the

6

account in early 2007, after Shanklin was terminated," was new money specifically brought in by another salesperson, "or was simply 'additional funding' that should be added to the existing account balance for calculating Shanklin's commission payment." (*Id.*).

Although CMA specifically addressed all the other interrogatories and document requests Shanklin sought in relation to Texas Children's Hospital, CMA did not address Document Request No. 14. (Docket Entry No. 41 at 2–4, 5–6). Document Request No. 14 seeks documents relevant to establishing the amount of incentive payments that Shanklin would be owed on the Texas Children's Hospital account, if he is entitled to posttermination incentive bonus payments. CMA must produce documents responsive to Request No. 14.

### B.     The Fulbright & Jaworski Account

The parties agree that Shanklin was the originating salesperson for a long-term product in the Fulbright & Jaworski account. As with the Texas Children's Hospital account, CMA has not addressed Document Request No. 14, and the documents sought in that request are relevant to establishing the amount of incentive payments that Shanklin would be owed on the Fulbright & Jaworski account, if he is entitled to posstermination incentive bonus payments. CMA must produce documents responsive to Request No. 14.

CMA has agreed to produce "documents within its possession and control that are responses to Interrogatory 1(a)–(e) for the period March 13, 2007 to February 28, 2009," but asserts that it "does not have access to the requested information for the period January 1, 2007 through March 30, 2007." (Docket Entry No. 41 at 6). CMA does not explain why it "does not have access to" these CMA business records. CMA must to produce relevant nonprivileged documents within its "possession, custody, or control." FED. R. CIV. P. 34(a)(1). CMA must produce responsive

7

documents for the period January 1, 2007 through March 30, 2007 or submit an affidavit by June 1, 2009, explaining why these records are not within its "possession, custody, or control."

### C. The NiSource Account

The parties agree that Shanklin was the originating salesperson for a long-term product in the NiSource account. CMA must produce documents responsive to Request No. 14, for the same reasons that applied to the Texas Children's Hospital and Fulbright & Jaworski accounts. As with the Fulbright & Jaworski account, CMA has agreed to produce "documents within its possession and control that are responsive to Interrogatory 1(a)–(e) . . . for January 31, 2007 and January 31, 2009," but asserts that it "does not have the requested information for the period February 1, 2007 through December 31, 2008." (Docket Entry No. 41 at 6). CMA must produce responsive documents for the period February 1, 2007 through December 31, 2008, or submit an affidavit by June 1, 2009, explaining why these records are not within its "possession, custody, or control."

### D. The Energy East Accounts

Shanklin contends that he is entitled to discovery on the Energy East accounts because he brought "new money" into Energy East's "Voluntary Employee Beneficiary Association" (VEBA) account[2] or a different account. Shanklin moves to compel CMA to answer Interrogatory No. 1 and to produce "documents showing the identity and value of assets held in CMA products in the Energy East accounts as of December 2005, to verify whether the assets as of September 2006 were 'new money'" or preexisting funds, "documents showing the asset value of the Energy East accounts on

---

[2] A VEBA is organized under Internal Revenue Code section 501(c)(9) and is a voluntary association of employees organized to pay life, sick, accident, and similar benefits to members or their dependents. *See* Internal Revenue Service, U.S. Dep't of Treasury, *Voluntary Employee Beneficiary Association–501(c)(9)*, *at* http://www.irs.gov/charities/nonprofits/article/0,,id=154610,00.html (last visited May 12, 2009).

the end-date of each quarter through the present, and showing the revenue generated by CMA from the accounts during the same period," and "correspondence and communications in 2006 between CMA and Energy East relating to new or additional funding in the accounts." (Docket Entry No. 40 at 10; No. 42 at 4).

CMA resists producing any documents relating to the Energy East accounts on the basis of relevance. CMA asserts that Shanklin has produced no evidence that he is entitled to incentive bonus payments from the Energy East accounts. An email chain between Shanklin and Jonathan Cleasby, part of the team that administered CMA's 2006 Incentive Plan, reveals that Cleasby attempted unsuccessfully in November 2006 to determine whether, and in what amount, Shanklin brought "new money" into the Energy East accounts, as Shanklin claimed. (Docket Entry No. 40, Ex. 11). CMA argues that Shanklin "has never articulated, either during his employment or during this litigation, the amount of this alleged new money, the date of funding or the name of a contact person at Energy East that could verify his involvement," (Docket Entry No. 41 at 8), and that Shanklin's discovery requests relating to the Energy East accounts are a "fishing expedition" to try to see if he could even assert an additional incentive payment claim. CMA also argues that the documents sought are not relevant because they do not show that Shanklin is entitled to incentive payments on the Energy East accounts. CMA submits an affidavit by Cleasby that asserts that the Energy East account documents for 2006 show that only two of the ten Energy East accounts at CMA funded in 2006, both on June 29, 2006, neither in a VEBA account. (*Id.*, Ex. C ¶ 6).

None of CMA's asserted grounds provides an adequate basis for resisting discovery. CMA's argument that Shanklin has not presented evidence that he is entitled to an incentive payment on the Energy East accounts has no relevance for purposes of Rule 26(b)(1), which permits discovery

9

"regarding any nonprivileged matter that is relevant to any party's *claim* or defense." FED. R. CIV. P. 26(b)(1) (emphasis added). CMA acknowledges that Shanklin has alleged from "the onset of this litigation" that he was owed incentive payments from the Energy East accounts. (Docket Entry No. 41 at 1). The discovery that Shanklin seeks is relevant to this claim.[3]

The cases CMA cites for the proposition that Shanklin's discovery request is a "fishing expedition" do not appear to apply. In *Mauldin v. Fiesta Mart*, 114 F.3d 1184, 1997 WL 255640, at **1, 2 (5th Cir. May 7, 1997) (unpublished), the Fifth Circuit upheld the district court's refusal to grant the plaintiff additional discovery after the defendant had already filed its summary judgment motion, concluding that the new and dramatically broader discovery sought was a dilatory tactic "calculated to uncover something upon which to rest the otherwise unsupported allegations in his complaint." In *Riley v. Walgreen Co.*, 233 F.R.D. 496, 500 (S.D. Tex. 2005), the court denied the plaintiff's motion to discover information about prescription mishandling in other pharmacies belonging to the chain of the pharmacy in which the plaintiff was injured because "[n]one of the pharmacy employees or store managers" involved in the incident underlying the lawsuit were "alleged to have worked at other stores." The plaintiff did not allege any wrongdoing in these other pharmacies but merely sought to "sample" incidents of mishandling in other stores to determine "whether the store at issue in this lawsuit [wa]s better, worse, or on a par with other Walgreen

---

[3] CMA has also suggested that as a matter of its policy, Shanklin had the burden at the time of funding to prove his entitlement to incentive bonus payments. Cleasby states in his affidavit that "the sales person was required to provide evidence that a funding did occur and that he was involved in the new funding." (Docket Entry No. 41, Ex. C ¶ 4). But the record also includes some conflicting evidence. The 2006 Institutional Sales Incentive Compensation Plan, which CMA contends contains the terms of CMA's incentive bonus plan, states that "[t]he designated Incentive Plan Administrator (or equivalent) has full responsibility for documenting all individual/pool calculations associated with the incentive awards." (Docket Entry No. 26, Ex. A-1, exhibit 9 ¶ 4). The 2006 Plan Component Summary Sheet does not state who has the burden of establishing responsibility for funding an account for incentive bonus payment purposes. (Docket Entry No. 29, Ex. A-5).

stores." *Id.* The court concluded that the discovery sought was overly broad and "of no particular value to this litigation." *Id.* Shanklin, by contrast, has alleged from the beginning of the lawsuit that CMA has failed to pay him incentive bonuses due on the Energy East accounts and that the payments owed on the Energy East accounts are a component of his damages. The discovery Shanklin seeks relating to the Energy East accounts is relevant to his claims. CMA must provide the same type of discovery for the Energy East accounts that it must provide for the Texas Children's Hospital, Fulbright & Jaworski, and NiSource accounts – answers to Interrogatory No. 1(a)–(e) and responses to Requests for Production Nos. 7, 9, 10, and 14. This information is relevant to show the date and amount of funding or "new money" that came into the Energy East accounts in 2006, the fees charged to Energy East based on any such funding, the total and quarter-end market values of the Energy East accounts, and any incentive payments made to any salesperson from the Energy East accounts. CMA need not respond to Interrogatory No. 1(f) or Requests for Production Nos. 8, 11, or 12, as the relevant information sought by these discovery requests will already be present in the production that CMA is required to make.

Shanklin also seeks "correspondence and communications in 2006 between CMA and Energy East relating to new or additional funding in the accounts." (Docket Entry No. 40 at 10). Request for Production No. 13, which seeks "[a]ll correspondence or communications to or from Customers (or any of them) relating to a CMA strategy/product (whether ultimately purchased/obtained or not)," encompasses such documents. CMA has objected to Request No. 13 on grounds of overbreadth. Request No. 13 is accordingly narrowed to encompass only correspondence and communications relating to new money in the Energy East accounts that funded in 2006.

**E.     The Koch Accounts**

Shanklin contends that he is entitled to incentive compensation from the sale of a cash product to Koch around November 2006, either as the primary salesperson or as one who made an "outbound funded referral" that resulted in a sale. (Docket Entry No. 40 at 11, Ex. 1 ¶ IV). Shanklin cites as evidence an email he received from David Dilts, another salesperson, stating: "[T]hanks for the heads up on Koch, lots of cooks but in the end it looks good for [redacted] for the Bermuda subsidiary and they just bought [redacted] plus domestically in Strat.  Good luck on the long term piece."  (*Id.*, Ex. 12).  Shanklin moves to compel CMA to respond to Interrogatory No. 1 and seeks documents "showing the asset value of CMA cash products in the Koch accounts . . . on the end-date of each quarter through the present," documents "showing the revenue generated by CMA from the accounts during the same period," "documents showing whether any other salesperson was paid a commission on the Koch accounts for cash products that funded in 2006," and "correspondence and communications between Koch and CMA in 2006 relating to the cash product." (*Id.* at 11–12).

As with the Energy East accounts, CMA resists production of the Koch documents on the grounds that Shanklin has presented no evidence that he is entitled to collect an incentive payment and that the documents he seeks show that he is not entitled to such payment. (Docket Entry No. 41 at 9). CMA attaches the affidavit of Eric Guzik, CMA's Vice President and Manager within GWIM Finance, who acts as a financial officer supporting CMA's Institutional and International Sales teams. Guzik states that only two of CMA's ten Koch accounts funded in or around December 2006. One of these accounts was opened after February 14, 2005 and received a transfer of funds from an existing account in December 2006. The other account was opened on October 31, 2006

and funded during December 2006. (*Id.*, Ex. D ¶ 4). According to Guzik, "David Dilts, a sales representative in Cash Sales, is listed as the sales person for all the 'Koch' accounts." (*Id.* ¶ 5).

As with the Energy East accounts, Shanklin has alleged from "the onset of this litigation" that he was owed incentive payments from the Koch account and that the incentive payments owed on the Koch account are a component of his damages. (*Id.* at 1). The documents Shanklin seeks are relevant to this claim, satisfying the Rule 26(b)(1) standard. CMA must produce the same information for the Koch account as for the Texas Children's Hospital, Fulbright & Jaworski, and NiSource accounts – answers to Interrogatory No. 1(a)–(e) and responses to Requests for Production Nos. 7, 9, 10, and 14. This information will sufficient to show the date and amount of any cash products purchased by Koch in 2006, the fees charged to Koch based on any such purchase, the total and quarter-end market values of these cash products, and any incentive payments made to any salesperson from the Koch accounts. CMA need not respond to Interrogatory No. 1(f) or Requests for Production Nos. 8, 11, or 12, as the relevant information sought by these discovery requests will already be present in the production that CMA is required to make.

Shanklin also seeks "correspondence and communications in 2006 between "Koch and CMA in 2006 relating to the cash product[s]." (Docket Entry No. 40 at 12). Request for Production No. 13, which seeks "[a]ll correspondence or communications to or from Customers (or any of them) relating to a CMA strategy/product (whether ultimately purchased/obtained or not)," encompasses such documents. CMA has objected to Request No. 13 as overbroad. Request No. 13 is accordingly narrowed to encompass only correspondence and communications relating to cash product sales in the Koch accounts that funded in 2006.

**IV.    Conclusion**

CMA must respond to Interrogatory No. 1(a)–(e) and produce documents responsive to Requests for Production Nos. 7, 9, 10, and 14, for all five customer accounts. CMA must produce documents responsive to Request for Production No. 13 that relate to any new sales or new money in the Energy East or Koch accounts in 2006. CMA need not respond to Interrogatory No. 1(f), Interrogatory No. 2, or Requests for Production Nos. 8, 11, and 12 for any of the five accounts, and need not produce documents responsive to Request for Production No. 13 from the Texas Children's Hospital, Fulbright & Jaworski, and NiSource accounts.

SIGNED on May 13, 2009, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge